IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**Dewayne Bulls**,
Plaintiff, Pro se

v.

**Federal Bureau of Investigation (FBI);**
**Western Pennsylvania U.S. Attorney's Office (DOJ);**
**General Services Administration (GSA);**
**William Tubb** (Property Manager, U.S. Courthouse);
**Clerk of Courts;**
**Judiciary Security;**
**U.S. Marshals;**
**John Doe(s) and Jane Doe(s),** employees, agents, officials, and/or individuals acting under the authority of the above-listed entities, whose identities are presently unknown and will be identified upon discovery;
**Defendants.**

RECEIVED
APR 25 2025
CLERK, U.S. DISTRICT COURT
FOR THE WESTERN DISTRICT
OF PENNSYLVANIA

#4

1541

CIVIL ACTION NO.: 2:25-cv-566
(Assigned by Clerk of Court)

Related to 25-407 et al

---

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Deprivation of Rights Under Color of Federal Law, Civil Rights Violations First, Fifth and Sixth Amendment Violations, Defamation, and Related Claims)
Plaintiff, Dewayne Bulls, files this Complaint against Defendants Federal Bureau of Investigation (FBI), Western Pennsylvania U.S. Attorney's Office (DOJ), General Services Administration (GSA), William Tubb (Property Manager, U.S. Courthouse), Clerk of Courts, Judicial Security, and U.S. Marshals, seeking redress for the deprivation of his civil rights guaranteed by the U.S. Constitution, caused by Defendants acting under color of federal law and authority, including violations of his First Fifth and sixth Amendment rights, defamation, and other related unlawful conduct.

---

I. JURISDICTION AND VENUE

1. **Federal-question jurisdiction.** This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the action arises under the Constitution and laws of the United States, including the First, Fourth, Fifth, and Sixth Amendments and federal civil-rights statutes (42 U.S.C. §§ 1983, 1985, 1986).
2. **Venue.** Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to the claims occurred in the Western District of Pennsylvania and all Defendants reside in, or conduct significant operations within, this District

## II. PARTIES

1. Plaintiff, Dewayne Bulls, is a resident of Pittsburgh PA, He is a citizen of the United States and brings this action to seek redress for violations of his constitutional civil rights and protections under federal law by federal officials and entities acting under color of federal authority.
2. Defendant Federal Bureau of Investigation (FBI) is a federal agency within the U.S. Department of Justice. Plaintiff brings claims related to the actions of FBI personnel and/or actions directed by the FBI, taken under color of federal law, as described below.
3. Defendant Western Pennsylvania U.S. Attorney's Office (DOJ) is an office within the U.S. Department of Justice. Plaintiff brings claims related to actions involving this office and its personnel, taken under color of federal law, as described below.
4. Defendant General Services Administration (GSA) is a federal agency that manages government buildings and facilities, including the U.S. Courthouse in Pittsburgh. Plaintiff brings claims related to GSA's actions and orders, taken under color of federal law, described below.
5. Defendant William Tubb is identified as the Property Manager of the U.S. Courthouse in Pittsburgh, Pennsylvania, employed by the GSA. Plaintiff brings claims against Defendant Tubb in his individual and/or official capacity related to his involvement in the events described below, acting under color of federal law.
6. Defendant Clerk of Courts, Judicial Security includes employees of the U.S. Courthouse security services responsible for maintaining security at the Pittsburgh U.S. Courthouse. Plaintiff brings claims related to the actions of these individuals, taken under color of federal law, in tampering with his personal devices and other conduct described below. The precise identities of individual employees may be determined through discovery.
7. Defendant U.S. Marshals are federal law enforcement officers assigned to enforce orders of the Court and provide security to federal courthouses. Plaintiff brings claims related to the actions of U.S. Marshals, taken under color of federal law, who acted under the direction of or in coordination with the FBI and other Defendants as described below. The precise identities of individual U.S. Marshals may be determined through discovery.

## III. FACTUAL ALLEGATIONS

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and states the factual basis for this Complaint as follows:

1. From 2015 to present the FBI has block the Plaintiff's bedrock constitutional right to attain legal counsel. In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court reaffirmed the foundational importance of ensuring every citizen's right to legal representation, particularly when liberty is at stake. The Pittsburgh FBI has blocked the Plaintiff constitutional right to legal counsel, with national Security letters because of their negligence in exposing the plaintiff to highly classified operations. This highly classified operation conducted by the FBI—an operation involving the deployment of ex-military personnel as covert law enforcement operatives and professional criminals, both inside and outside of correctional institutions. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and states the factual basis for this

Complaint as follows: From 2015 to present, in *Gideon v. Wainwright*, 372 U.S. 335 (1963), the Supreme Court established that the Sixth Amendment guarantees an individual the right to legal counsel **whenever liberty is at risk**. The Pittsburgh FBI has blocked the Plaintiff's constitutional right to legal counsel through the issuance of National Security Letters, due to their own negligence in exposing the Plaintiff to highly classified operations. This highly classified operation was conducted by the FBI—an operation involving the deployment of ex-military personnel as covert law enforcement operatives and professional criminals, both inside and outside of correctional institutions. This covert program is designed to suppress a hybrid theory: that regular criminals, once incarcerated, would be radicalized. This highly classified operation is also used "to destabilize and infiltrate movements and to do the FBI's dirty work." It is a modern-day COINTELPRO. Yet the Plaintiff knows this to be fact. According to the Pittsburgh FBI, he is a criminal. Information uncovered by the Plaintiff confirms that participants in this highly classified operation who are ex-military received remuneration in 2014 at a rate of $500 per day, credited toward their military pensions for time incarcerated. By embedding these individuals in the criminal justice system, the FBI is effectively duping the system. How does one come to know this and still be deemed a criminal? The Plaintiff independently discovered and deciphered the existence and implications of this covert operations while incarcerated in 2014 based on the Pittsburgh FBI's own negligence in trying to entrap him with these coverts operatives in state prison once released and walk the plaintiff right into federal indictment using this covert force. Its impact on his life has been profound, **altering the trajectory of his life and his views on crime**—specifically, that **the FBI owns crime**—and the criminal justice system. The Pittsburgh FBI's actions, rooted in negligence and abuse, directly contributed to this exposure. As the Plaintiff has rightly stated: "When you abuse, things get exposed." Yet while the Defendants have never been held accountable for their misconduct and negligence, the Plaintiff has continued to suffer the consequences, including the blocking of his constitutional right to legal counsel. For over a decade, the Pittsburgh FBI has weaponized his knowledge of this operation to shield their crimes. Using National Security Letters to block the plaintiffs right to legal counsel, not for nation security the plaintiff has no interest in making this public The Plaintiff is no whistleblower, The Plaintiff only wants to hold the Pittsburgh FBI accountable in the court of law.

2. **October 21, 2024,** Plaintiff received a written response from the Office of Pennsylvania Governor Josh Shapiro advising that the Governor has no jurisdiction over the continued withholding of Plaintiff's state tax refund **and** stating that the matter "appears to involve federal law-enforcement action." Plaintiff asserts this letter confirms that the Pittsburgh Field Office of the FBI is unlawfully retaining or blocking release of his state tax return without statutory authority, for the purpose of inflicting financial hardship and irreparable harm.

2. On July 8, 2024, Plaintiff Dewayne Bulls was served by U.S. Marshals with a Cease-and-Desist Order issued by the General Services Administration (GSA), under the direction of or in coordination with the Pittsburgh Field Office of the Federal Bureau of Investigation (FBI).
    - This Order prohibits Plaintiff from accessing the fourth floor of the Joseph F. Weis, Jr. Courthouse, which houses the U.S. Attorney's Office for the Western District of Pennsylvania (USAO). The restriction appears to be predicated on alleged violations of Title 41 of the Code of Federal Regulations—specifically, purported disorderly or

> disruptive conduct under 41 C.F.R. § 102-74.390—beginning around September 2022. Plaintiff, however, contends that there is no evidence to support these allegations and seeks acknowledgment from Defendants that such evidence does not exist, and the disruptive conduct never happened.
> - Plaintiff states that no such disruptive events ever occurred. Plaintiff maintains that the GSA's actions were undertaken based on false, fabricated, or misleading claims, orchestrated in retaliation for Plaintiff's efforts to deliver evidence of misconduct involving the Pittsburgh FBI to the USAO. Plaintiff turned over his own records of interactions with the U.S. Attorney's office, including instances where he was deliberately hung up on and told the office would no longer be accepting his evidence against the Pittsburgh FBI. These recordings were submitted to the Civil Rights Division, the U.S. Senate, the FBI Director, and the White House, but were ignored.

3. The issuance and enforcement of this Cease-and-Desist Order, without valid grounds or prior due process, constitutes a violation of Plaintiff's Fifth Amendment rights under the U.S. Constitution, specifically the right to fair treatment and access to federal offices to report criminal activity.
   - **Mathews v. Eldridge, 424 U.S. 319, 333-35 (1976)** (balancing test); **Bilotta v. United States, 791 F.3d 236, 243-44 (3d Cir. 2015)** (right to contest federal exclusion order).
4. To the extent that federal employees knowingly made false statements or materially misrepresented Plaintiff's conduct to justify the Order, such conduct violates 18 U.S.C. § 1001, which criminalizes false statements in matters within federal jurisdiction.
   - **United States v. Gaudin, 515 U.S. 506 (1995)** (false statements in matters of federal jurisdiction).
5. Furthermore, the prohibition on Plaintiff's access to the USAO constitutes an obstruction of justice, intended to prevent Plaintiff from submitting material evidence and pursuing legitimate governmental redress, in violation of Plaintiff's rights under federal whistleblower protections and civil liberties guaranteed by federal law.

---

**Specific Events Detailing Obstruction, Intimidation, Suppression Defamation and Violations of the 4th Amendment**

1. **March 24, 2025:** Plaintiff Dewayne Bulls arrived at the U.S. Courthouse in Pittsburgh to file legal documents related to FBI misconduct.
   - While waiting, Plaintiff was subjected to targeted intimidation orchestrated by the Pittsburgh FBI, including overhearing law enforcement personnel use the word "discipline" over a courthouse radio in a manner intended to create fear the Plaintiff was going to be arrested and foster an atmosphere of hostility and intimidation,
   - US Judicial Security and the U.S. Marshal's particularly named Allen, acting under FBI directive and under color of federal authority, deliberately tried to provoke Plaintiff to incite a reaction and fabricate grounds for detainment or removal and thereby obstructing Plaintiff's right to file suit.
   - **Anderson v. Davila, 125 F.3d 148, 161-63 (3d Cir. 1997)** (First Amendment retaliation).
2. U.S. Marshals, under FBI influence and under color of federal authority, further accused Plaintiff of having delivered urine to then-U.S. Attorney Olshan on November 13th —a fabricated lie unsupported by documentation or surveillance, which Plaintiff repeatedly requested from U.S.

   Courthouse Security and the U.S. Marshals for submission to the DOJ, but it has not been provided.
   - False accusations impugning moral turpitude constitute defamation per se under Pennsylvania law; federal officials enjoy no immunity for knowingly false statements, see **Barr v. Matteo, 360 U.S. 564, 574-75 (1959)** (absolute privilege lost where statements are outside scope or malicious).
3. **April 14, 2025:** Plaintiff entered the U.S. Courthouse in Pittsburgh. At the security checkpoint, Plaintiff observed Judicial Security personnel, under direction from the FBI and acting under color of federal authority, powering on Plaintiff's personal tablet while it was in their possession. The activation required a firm, deliberate press, confirming the action was intentional. Plaintiff states the activation was intended to facilitate the remote installation of malware while he was separated from the device. Upon observing his tablet being activated, Plaintiff immediately stated on surveillance, "Let me make sure this tablet is off."
4. **April 21, 2025:** Plaintiff went to the U.S. Courthouse in Pittsburgh to deliver exhibits related to FBI misconduct. Upon arrival, U.S. Court Security secured Plaintiff's tablet out of surveillance view. As Plaintiff ascended the stairs, Judicial Security, acting under color of federal authority, powered on Plaintiff's tablet, providing the FBI a covert opportunity to remotely install malware. Plaintiff states this is verified by Courthouse Surveillance footage.
5. **April 22, 2025 (Continued):** Plaintiff's tablet was deliberately placed out of view of the security camera while judicial security personnel, acting under color of federal authority, powered it on without consent as Plaintiff was at the Clerk of Courts Office. During this time, the Clerk of Courts intentionally stalled Plaintiff, claiming—under FBI directives—that they were checking Plaintiff's IPF status in relation to an appeal to the U.S. Court of Appeals. Plaintiff asserts this was a pretext to allow for an FBI malware intrusion, which prevents Plaintiff from sharing critical evidence with U.S. Senators, House and Senate Committees, and any government entity the Pittsburgh FBI perceives as a threat to FISA Ending. Defendants have an established history of similar sabotage, including the destruction of Plaintiff's iPhone and Android devices, that the plaintiff submitted to the DOJ contained a substantial body of evidence documenting FBI corruption.

   - **United States v. Kincade, 379 F.3d 813, 818 (9th Cir. 2004)** (unlawful government search and seizure; right to privacy in personal devices).
   - **Riley v. California, 573 U.S. 373 (2014)** (Fourth Amendment protections against unreasonable searches of cell phones).
6. The combined actions of the FBI, U.S. Marshals, GSA, and Judicial Security, specifically their intentional tampering with Plaintiff's personal property, their false accusations, and their efforts to block Plaintiff from submitting legitimate evidence to the US Attorney Office and making legal claims with a Judicial Security escort constitute a concerted pattern of retaliation against Plaintiff for exercising his First Amendment rights to free speech and to petition the government for a redress of grievances.
   - **Garrity v. New Jersey, 385 U.S. 493, 496 (1967)** (First Amendment retaliation claim for interference with the right to petition the government).
   - **Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)** (First Amendment claims for failure to redress grievances).

## IV. CAUSES OF ACTION

## *Count I – First-Amendment Retaliation*
*(Freedom of Speech & Right to Petition)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Plaintiff engaged in protected activity by gathering and submitting evidence of FBI misconduct and by attempting to file pleadings with the Court and the USAO.
3. Defendants, acting under color of federal authority, issued a baseless Cease-and-Desist Order, fabricated accusations, intimidated Plaintiff, and tampered with his devices—all adverse actions that would deter a person of ordinary firmness from continuing protected activity.
4. A causal connection exists between Plaintiff's speech/petitioning and Defendants' retaliation. **See Crawford-El v. Britton, 523 U.S. 574 (1998); Hartman v. Moore, 547 U.S. 250 (2006)** (retaliation claims under the First Amendment).
5. Plaintiff is entitled to declaratory and injunctive relief, compensatory damages, and punitive damages.

## *Count II – Fifth-Amendment Violations*
*(Procedural Due Process & Equal Protection)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Defendants deprived Plaintiff of liberty and property interests—access to a public building, reputation, electronic property, and tax refund—without notice or hearing, failing the **Mathews v. Eldridge, 424 U.S. 319 (1976)** balancing test.
3. Defendants singled out Plaintiff for adverse treatment, violating equal protection guarantees.
4. Plaintiff suffered actual damages and sought declaratory, injunctive, and monetary relief.

## Count III – Defamation

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Defendants knowingly published false statements—e.g., that Plaintiff delivered urine to the U.S. Attorney—constituting defamation per se under Pennsylvania law. **See Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990)**.
3. Statements were made with actual malice, causing reputational and emotional harm.
4. Plaintiff seeks presumed, compensatory, and punitive damages.

## Count IV – Intentional Infliction of Emotional Distress

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Defendants' extreme and outrageous conduct—including intimidation, false accusations, and device tampering—was intended to cause severe distress.

3. Plaintiff in fact suffered severe emotional distress. **See Snyder v. Phelps, 562 U.S. 443 (2011); Hustler Magazine v. Falwell, 485 U.S. 46 (1988)** (emotional distress claims in the context of First Amendment).
4. Plaintiff seeks compensatory and punitive damages.

## Count V – Fourth-Amendment Violations
*(Unreasonable Search & Seizure)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Judicial Security personnel and other federal agents powered on and manipulated Plaintiff's tablet on three separate occasions—**April 14, 2025, April 21, 2025, and April 22, 2025**—without consent, warrant, or probable cause.
3. These intrusions violated Plaintiff's reasonable expectation of privacy in his digital device. **See Riley v. California, 573 U.S. 373 (2014)** (digital device search protections under the Fourth Amendment).
4. Plaintiff seeks declaratory relief and damages.

## Count VI – Sixth-Amendment Violations
*(Right to Counsel)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. The Pittsburgh FBI's use of National Security Letters and related tactics obstructed Plaintiff's efforts to secure legal representation.
3. Such interference violates the Sixth Amendment. **See Gideon v. Wainwright, 372 U.S. 335 (1963); Maine v. Moulton, 474 U.S. 159 (1985)** (Sixth Amendment right to counsel and obstruction).
4. Plaintiff seeks declaratory and injunctive relief, plus damages.

## Count VII – Deprivation of Rights Under Color of Law
*(Civil Rights Violations)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Each Defendant, acting under color of federal authority, deprived Plaintiff of rights secured by the First, Fourth, Fifth, and Sixth Amendments. **\*\*See 42 U.S.C. § 1983** (actions under color of state law); **Monell v. Department of Social Services, 436 U.S. 658 (1978)** (municipal liability); **West v. Atkins, 487 U.S. 42 (1988)** (government employees acting under color of law).
3. Defendants' actions were intentional, reckless, and unreasonable.
4. Plaintiff seeks compensatory and punitive damages and such other relief as the Court deems just.

## Count VIII – Civil Rights Conspiracy / Interference
*(42 U.S.C. §§ 1985(3) & 1986)*

1. Plaintiff realleges and incorporates all preceding paragraphs.
2. Defendants conspired to hinder and deter Plaintiff from exercising federally protected rights, in violation of **42 U.S.C. § 1985(3)**.
3. Overt acts include:
    - Issuance of the Cease-and-Desist Order on July 8, 2024.
    - Fabrication of the "urine delivery" accusation on March 24, 2025.
    - Intimidation and provocation by U.S. Marshal Allen on March 24, 2025.
    - Tampering with Plaintiff's tablet on **April 14, 2025, April 21, 2025, and April 22, 2025** at the US Court House.
    - Withholding Plaintiff's state tax return and obstructing counsel via NSLs.
4. Defendants who had power to prevent the conspiracy but failed to do so are liable under **42 U.S.C. § 1986**.
5. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and attorneys' fees.

## *V. PRAYER FOR RELIEF*

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Declare that the actions of the Defendants, as described herein, violated Plaintiff's First, Fourth, and Fifth Amendment rights, and other constitutional protections.
2. Award Plaintiff compensatory damages in the amount of **FORTY MILLION DOLLARS ($40,000,000.00)**, for the harm caused by Defendants' actions, including but not limited to constitutional violations emotional distress, defamation, the loss of privacy and security, interference with his ability to attain legal representation, and the unconstitutional withholding of Plaintiff's state tax return.
3. Award punitive damages for Defendants' unlawful and malicious conduct, intended to punish and deter similar behavior in the future.
4. Issue an injunction requiring Defendants to cease their unlawful practices, including blocking Plaintiff's access to the U.S. Attorney's Office and other government offices, and restore Plaintiff's access to those offices, without being escorted by **Judicial Security** which he has been unlawfully excluded from.
5. Declare that the actions of the Pittsburgh FBI, including the use of National Security Letters (NSLs), are unlawfully blocking Plaintiff's Constitutional right to attain legal representation, infringing upon his right to counsel and his ability to pursue legal recourse.
6. Order the release of Plaintiff's state tax return, which has been unlawfully withheld, in violation of his constitutional right to due process and equal protection under the law.
7. Award Plaintiff's reasonable attorneys' fees and costs incurred in bringing this action, pursuant to applicable federal law, including but not limited to 42 U.S.C. § 1988 (as applicable in civil rights cases).
8. Grant such other and further relief as the Court deems just and proper.

## *VI. JURY DEMAND*

Plaintiff demands trial by jury on all issues so triable.